UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:23-CR-47-CCB-SJF |
| GUSTAVO PLASCENCIA | |

**ORDER**

On June 14, 2023, Defendant Gustavo Plascencia was indicted for knowingly and intentionally possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). [DE 1]. Mr. Plascencia filed a motion to suppress evidence seized during the search of his rental vehicle. [DE 49]. The Government filed a response to the motion, and the motion became ripe without a reply from Mr. Plascencia. [DE 50.]

**Background**

On January 26, 2022, Laporte County Sheriff Deputy Johnathon Samuelson observed Mr. Plascencia drive westbound in a white Toyota 4-Runner with Oklahoma license plates. [DE 49 at 1]. Mr. Plascencia did not at first appear to be speeding but he maintained a rigid posture and held the steering wheel in the "10 and 2" position. [*Id.* at 2]. Deputy Samuelson caught up to Mr. Plascencia and paced him driving 74 miles per hour in an area with a speed limit of 70 miles per hour. [*Id*]. As Deputy Samuelson drove next to Mr. Plascencia, Mr. Plascencia changed lanes to allow Deputy Samuelson to pass. [*Id*]. Mr. Plascencia began to cross the lane lines before initiating his turn signal. [*Id*]. Deputy Samuelson pulled Mr. Plascencia over. [*Id*].

Mr. Plascencia provided Deputy Samuelson with his California driver's license and the rental paperwork for the Toyota. [*Id*]. Deputy Samuelson smelled marijuana as he was speaking to Mr. Plascencia. [*Id.* at 3]. Deputy Samuelson ordered Mr. Plascencia out of the vehicle. [*Id*]. Once outside the vehicle, the two men shook hands. [*Id*]. Deputy Samuelson noted that Mr. Plascencia's

hands were sweaty even though it was cold outside. [*Id*]. Mr. Plascencia agreed to join Deputy Samuelson in his patrol vehicle where they discussed details about Mr. Plascencia's travels. [*Id*]. Mr. Plascencia revealed that he rented the Toyota in California and drove it to Philadelphia to deliver his girlfriend's possessions to her. [*Id*]. Mr. Plascencia told Deputy Samuelson that he was now on his way to Chicago to catch a flight to California. [*Id*]. Deputy Samuelson asked for details about his travels, such as the name of his hotel, but Mr. Plascencia never gave definitive answers. [*Id*].

Deputy Samuelson asked Mr. Plascencia about the scent of marijuana coming from the Toyota, and Mr. Plascencia revealed that he smoked marijuana earlier. [*Id*]. Mr. Plascencia also revealed that there was a small amount of marijuana in the Toyota that he purchased from a dispensary. [*Id*]. Mr. Plascencia denied that there were other drugs in the vehicle or large amounts of money. [*Id*]. Deputy Samuelson told Mr. Plascencia that he had probable cause to search the vehicle because of the smell of marijuana. [*Id*]. Deputy Samuelson began searching the Toyota and was later joined by Deputy Wade Wallace. [*Id.* at 4]. The Deputies found marijuana in the front passenger seat of the Toyota. [*Id*]. The Deputies continued their search into the back of the vehicle where the third-row seats were folded down. [DE 50 at 5].

The Deputies looked through Mr. Plascencia's suitcases. [DE 49 at 4]. Deputy Samuelson also noticed large chunks of insulating foam in the rear cargo area. [DE 50 at 5]. He recognized this foam as the type typically inserted into vehicle bodies when they are manufactured. [*Id*]. Deputy Samuelson opened the jack storage compartment and found two large packages of cocaine in the rear wheel well of the Toyota. [*Id*].[1]

---

[1] Mr. Plascencia's brief describes the training that Deputy Samuelson and Deputy Wallace attended through a Company called "Street Cop." [DE 49 at 4-6]. But Mr. Plascencia does not tie any of these factual allegations to his arguments about the validity of the stop or the subsequent search. Because these facts are not pertinent to the legal analysis, they will not be summarized here.

2

**Analysis**

Mr. Plascencia requested an evidentiary hearing, so he bears the burden of showing that there are disputed issues of material fact that require an evidentiary hearing. *See United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988). "A disputed issue only warrants an evidentiary hearing, however, if the difference in facts is material, that is, only if the disputed fact makes a difference in the outcome." *United States v. Juarez*, 454 F.3d 717, 720 (7th Cir. 2006) (internal quotations and citation omitted). The Court only needs to conduct an evidentiary hearing "when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004). No evidentiary hearing is needed to resolve Mr. Plascencia's motion to suppress because the Court can resolve Mr. Plascencia's motion relying on his version of the events.

**I. The Traffic Stop**

Mr. Plascencia challenges the lawfulness of the traffic stop by arguing that Deputy Samuelson lacked probable cause to pull him over. [DE 49 at 6-7]. The Fourth Amendment forbids unreasonable searches and seizures by the government, and these protections extend to investigatory stops of vehicles. *United States v. Cortez*, 449 U.S. 411, 417 (1981). Courts must look at the "totality of the circumstances" to examine whether an officer had a "particularized and objective basis" for suspecting illegal conduct. *Id.* Law enforcement may stop a vehicle when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (*quoting United States v. Cashman*, 216 F.3d 582, 586 (7th Cir.2000)). Indeed, "[i]f an officer reasonably thinks he sees a driver commit a traffic violation, that is sufficient grounds to pull him over without offending the Constitution" and whether the driver committed a traffic infraction is "irrelevant for Fourth

3

Amendment purposes so long as there was an objective basis for a reasonable belief he did." *United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) (*citing Cashman*, 216 F.3d at 587).

Mr. Plascencia contends that the stop was unlawful because he was not speeding and because he properly signaled before changing lanes. [DE 49 at 6]. The Government argues the Deputies had authority to conduct the stop after watching Mr. Plascencia commit traffic violations. [DE 50 at 6]. The appropriate inquiry is whether there was an objective basis for Deputy Samuelson to reasonably believe that Mr. Plascencia committed the traffic violations, not whether he actually committed the violations. *See Lewis,* 920 F.3d at 489. Deputy Samuelson paced Mr. Plascencia going 74 miles per hour in a 70 miles per hour speed zone. [DE 49 at 2]. Deputy Samuelson also watched Mr. Plascencia use his turn signal only after the Toyota's tires began to cross the lines between the lanes. [*Id*]. Thus, Deputy Samuelson watched Mr. Plascencia commit a lane violation and a speeding violation before pulling him over. *See* Ind. Code §§ 9-21-5-2(a)(6), 9-21-8-25[2]. These observations provide an objective basis for Deputy Samuelson's belief that Mr. Plascencia committed traffic infractions.

Mr. Plascencia also asserts that Deputy Samuelson pulled him over because Mr. Plascencia is a Hispanic man who was driving a vehicle with an Oklahoma license plate. [DE 49 at 7]. The Government argues that because Deputy Samuelson had a legitimate basis for the stop, an ulterior motive would not have invalidated the stop. [DE 50 at 7]. The Government is correct. A law enforcement officer's subjective motives for conducting a traffic stop will not invalidate an otherwise valid stop. *Whren v. United States*, 517 U.S. 806, 813 (1996). So even if it were true that Deputy Samuelson was motivated to stop Mr. Plascencia for an illegitimate reason, it would not

---

[2] The signaling requirement was incorporated into Ind. Code § 9-21-8-24 as of January 1, 2023.

invalidate the stop because Deputy Samuelson believed he saw Mr. Plascencia commit two separate traffic infractions.

**II.    The Search**

Mr. Plascencia argues that law enforcement also lacked probable cause to search the Toyota, and that even if there was probable cause, the search exceeded the scope of what was legally permissible. [DE 49 at 7]. The Government contends that the Deputies had probable cause to search the entire vehicle because they smelled marijuana, Mr. Plascencia admitted smoking marijuana recently, and because Mr. Plascencia revealed that there was marijuana in the Toyota. [DE 50 at 7-8]. Law enforcement may search a vehicle without a warrant if there is "probable cause to believe it contains contraband or evidence of illegal activity." *United States v. Washburn*, 383 F.3d 638, 641 (7th Cir. 2004). Probable cause to search a vehicle exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983). Further, "[t]he smell of marijuana alone justifies a Fourth Amendment search or seizure." *United States v. Jackson*, 103 F.4th 483, 488 (7th Cir. 2024). When law enforcement has probable cause to search a vehicle, the scope of the search includes "every part of the vehicle" that may conceal the target of the search. *United States v. Hays*, 90 F.4th 904, 907 (7th Cir. 2004) (cleaned up). This includes "closed compartments, containers, packages, and trunks." *Id.*

The Deputies had probable cause to search the Toyota because Deputy Samuelson smelled marijuana coming from the Toyota. As in *Jackson*, the smell of marijuana alone provided an independent basis for probable cause and law enforcement observed additional indicators suggesting potential illegal activity under the totality of the circumstances. *See* 103 F.4th at 488. For one, Mr. Plascencia admitted there was marijuana in the Toyota. *See Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) (finding probable cause when a defendant admitted possessing illegal drugs); [DE 49, pg. 2-3]. In addition, Mr. Plascencia drove with a rigid posture, held the steering wheel in the "10 and 2"

5

position and had sweaty hands despite the cold weather. [*Id*]. And although he was in the middle of a cross-country road trip, Mr. Plascencia could not answer basic questions about his travel itinerary. [*Id*]; *See United States v. Patton*, 705 F.3d 734, 740 (7th Cir.2013) (noting that displays of nervousness are recognized as a sign that a suspect has something to hide). This was enough for the Deputies to conclude that there was a fair probability that contraband could be found in the vehicle, including the jack storage compartment and the wheel well. *See Hays*, 90 F.4th at 907.

Mr. Plascencia's argument about the permissible scope of the search fares no better. Mr. Plascencia relies on three cases to support his argument that the search of the jack storage compartment and wheel well was outside the permissible scope of the search, but they are all distinguishable on their facts. First, in *United States v. Nielsen*, the Tenth Circuit held that the smell of burnt marijuana in the passenger area alone, without further corroborating evidence, did not give probable cause to search the defendant's trunk. 9 F.3d 1487, 1491 (10th Cir. 1993). But here, the Deputies' belief that there was marijuana in Mr. Plascencia's Toyota was corroborated when Mr. Plascencia told them there was marijuana in the Toyota and the Deputies found marijuana in the front passenger seat. [DE 49]. Further, the third-row seats of the Toyota were folded down, and Deputy Samuelson noticed large chunks of insulating foam in the rear cargo area. [DE 50 at 5]. He recognized this foam as the type typically inserted into vehicle bodies when they are manufactured. [*Id*]. These observations support a reasonable inference that foam was likely removed from an inner portion of the vehicle to create space to conceal contraband. [*Id*]. So *Nielson*, in addition to being non-binding, is distinguishable on its facts.

Next, Mr. Plascencia borrows a quote from *United States v. Franklin* to argue that the scope of the search should be limited to the passenger area of the Toyota. 547 F.3d 726, 735 (7th Cir. 2008). While quoting *Franklin*, Mr. Plascencia's brief states that the "[t]he odor of marijuana 'would provide an officer with probable cause to search the passenger compartment and containers within the

6

passenger compartment.'" [DE 49 at 8 *quoting* 547 F.3d at 735]. But Mr. Plascencia takes the *Franklin* quote out of context. The *Franklin* court noted that its opinion was part of a line of cases in which "[t]his circuit has held that [a] search can go as far as probable cause extends, even into separate containers or the trunk of the car." 547 F.3d at 735 (collecting cases). Therefore, his reliance on the quote is misplaced.

Finally, Mr. Plascencia relies on *United States v. Garcia*, 897 F.2d 1413 (7th Cir. 1990). But his reliance on *Garcia* is also misplaced. The search in *Garcia* began as a consent search, so it was initially "limited by the breadth of the actual consent." *Id.* at 1419. Law enforcement then gathered probable cause to search the door panels because they noticed missing door handles, along with mismatched and ill-fitting screws on the doors. *Id.* at 1420. Here, the Deputies did not rely on Mr. Plascencia's consent to search his Toyota because they had probable cause to search the Toyota at the start of their search. As a result, they were allowed to search every part of the vehicle, including the jack storage compartment and the wheel well. *See Hays*, 90 F.4th at 907.

## Conclusion

Mr. Plascencia fails to show that Deputy Samuelson lacked probable cause when he initiated the traffic stop, or that Deputy Samuelson and Deputy Wallace lacked probable cause to search Mr. Plascencia's entire vehicle. Therefore, Mr. Plascencia's motion to suppress evidence is **DENIED**. [DE 49]. The two-day jury trial is **RESET** for December 3, 2024, at 9:30 a.m. (Eastern time) at the Robert A. Grant Federal Building in South Bend, Indiana. The final pretrial conference is **RESET** for November 25, 2024, at 2:30 p.m. (Eastern time).

SO ORDERED.
November 15, 2024

                                                                           /s/ *Cristal C. Brisco*
                                                                           CRISTAL C. BRISCO, JUDGE
                                                                           UNITED STATES DISTRICT COURT